UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

COACH, INC., *et al.*,
    Plaintiffs,

vs.

ISLAND RAYZ, *et al.*,
    Defendants.

Case No. 1:11-cv-478

Litkovitz, M.J.

**ORDER**

This matter is before the Court on plaintiffs' motion for partial summary judgment (Doc. 36), to which defendants Tara K. McDonald and Ray T. McDonald, proceeding pro se, and Island Rayz have not responded.

**I. Background**

On March 13, 2013, the Court ordered defendants to show cause, in writing and within fourteen days, why the plaintiffs' motion for partial summary judgment should not be construed as unopposed and granted for the reasons stated in plaintiffs' motion. (Doc. 38). To date, more than fourteen days later, defendants have not responded to the Show Cause Order or to plaintiffs' motion. For the following reasons, the Court finds that granting partial summary judgment in plaintiffs' favor is appropriate.

Plaintiffs, Coach, Inc. and Coach Services, Inc. (Coach), allege that defendants are liable for false advertising, trademark dilution, and the sale of counterfeit products bearing the Coach, Inc. trademark in violation of Sections 32, 43(a), 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(c), and for copyright infringement under the United States Copyright Act, 17 U.S.C. § 501 *et seq.* Plaintiffs also raise Ohio state law claims of trademark infringement, deceptive trade practices, trademark violations, and unjust enrichment. (Doc. 1). Plaintiffs move for partial summary judgment on the issue of liability only on their Section 32 Lanham Act claim, 15 U.S.C. § 1114, asserting there is no issue of material fact regarding the defendants' sale of counterfeit goods and infringement of plaintiffs' protected trademarks and copyrights.

Plaintiffs support their motion with: the affidavit of in-house counsel for Coach, Inc., Ethan Lau, Esq.; deposition testimony of defendant Tara McDonald; deposition testimony of defendant Ray McDonald; and the affidavit of Robert L. Hope, a private investigator retained by plaintiffs to investigate the sale of counterfeit Coach products at Island Rayz, defendants' place of business. (Doc. 36).

Where a non-moving party fails to oppose a motion for summary judgment, then "summary judgment, if appropriate, shall be entered against" him. Fed. R. Civ. P. 56(e). However, the Court may not blindly accept the movant's statement of undisputed facts but, rather, must "satisfy itself that the evidence in the summary judgment record supports this relief." *Hitachi Med. Sys. America, Inc. v. Branch*, No. 5:09-cv-1575, 2011 WL 3921718, at *12 (N.D. Ohio Sept. 7, 2011) (citing *Vermont Teddy Bear Co., v. 1-900 Beargram Co.*, 373 F.3d 241, 244 (2d. Cir. 2004)). For the reasons that follow, the Court finds that plaintiffs are entitled to partial summary judgment.

## II. Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475

U.S. 574, 587 (1986); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

### III. Undisputed Facts

Plaintiffs move for partial summary judgment on the issue of liability on their claims of trademark infringement under the Lanham Act.[1] Plaintiffs present the following evidence in support of their motion for partial summary judgment which, as noted above, has not been opposed by plaintiffs.[2]

Coach is a world-renowned producer of high quality merchandise. Coach Services, Inc. has adopted over forty-five (45) trademarks, including the marks at issue in this action, which are protected by Federal Trademark Registrations (collectively the Coach Registered Trademarks). Coach has expended substantial time, money and other resources developing, advertising and otherwise promoting the Coach Registered Trademarks. As a result, members of the consuming

---

[1] Plaintiffs expressly preserve their other claims and their right to elect statutory damages. *See* Doc. 36, Ex. 1 at 1.

[2] In failing to file a memorandum in opposition to plaintiffs' motion for partial summary judgment, defendants have failed to offer any facts or evidence opposing plaintiffs' claims. As such, the facts as presented by

3

public readily identify merchandise bearing the Coach Registered Trademarks as being high quality merchandise. *See* Doc. 36, Ex. A, ¶¶ 8, 9, 13, 16, Affidavit of Ethan Lau (hereafter "Lau Affidavit").

The Coach Registered Trademarks, which are distinctive marks used to identify high quality merchandise, have been used for many years and have not been assigned or licensed to defendants in this matter. Lau Affidavit at ¶ 18. By virtue of the sustained use of the marks, the registrations, the high-quality products and substantial advertising and publicity for the marks, the Coach Registered Trademarks have acquired secondary meaning so that any product or advertisement bearing such marks is immediately associated by consumers, the public and the trade as originating with Coach. *Id.* at ¶¶ 15-16.

Ray and Tara McDonald are the owners of Island Rayz tanning salon, which in April of 2011 was located in Proctorville, Ohio, but is now located in South Point, Ohio. (Doc. 31, Ex. B at 6, Deposition of Tara McDonald (hereafter "T. McDonald Depo."); Doc. 31, Ex. C at 18, Deposition of Ray McDonald (hereafter "R. McDonald Depo."). At the time they started the business, Ray and Tara McDonald jointly decided to sell handbags, and also collaborated regarding which handbags to purchase for resale at the Island Rayz tanning salon. R. McDonald Depo. at 45:6-18; 46:12-16. Beginning in approximately 2009, Ray and Tara McDonald started purchasing handbags at flea markets bearing designer labels for resale at the Island Rayz tanning salon. R. McDonald Depo. at 37:2-11. This was in response to customer inquiries, specially asking whether they carried Coach handbags. *Id.* at 37:12-22. While customers also occasionally asked for Chanel bags, Coach was the most requested and most popular designer when it came to customer demand at Island Rayz. *Id.* at 48:6-17. Defendants chose to sell fabric handbags bearing Coach Registered Trademarks as opposed to leather bags because they felt customers wanted items with Cs on the fabric, making the items easily identifiable with the Coach brand. T. McDonald Depo. at 13: 1-23. In addition to handbags, Defendants also sold

---

plaintiffs are undisputed.

sunglasses and wallets bearing Coach Registered Trademarks. R. McDonald Depo. at 70-72; T. McDonald Depo. at 31-33.

Defendants travelled to St. Augustine, Florida, Milton, West Virginia, and Youngstown, Ohio to shop at flea markets and purchase these items. R. McDonald Depo. at 49:14-23. They would pay cash for the handbags, sunglasses, and wallets, and Defendant Ray McDonald would make the transaction, physically handing the cash to the flea market vendors. *Id.* at 52:13-20. Defendants would then sell the items at Island Rayz, charging double the amount they had paid. *Id.* at 56: 4-17.

Defendants were well aware of the specific marks and traits that made these handbags resemble Coach handbags. In fact, Defendant Ray McDonald testified that he could easily tell that a handbag was a Coach replica by looking at the lining and the hardware. *Id.* at 57:2-18. Tara McDonald was familiar with and admitted to selling handbags bearing both the Coach "Signature C" and "Coach Op Art" prints. T. McDonald Depo. at 14-15. The McDonalds clearly understood that these handbags were not genuine Coach items, as they claim to have told customers they were "replica purses." R. McDonald Depo. at 58:11-17. Out-of-town customers would sometimes come from hours away to purchase handbags from Defendants. T. McDonald Depo. at 52:14-24. Defendant Tara McDonald testified that the Coach replica handbags were "junky," and that she "hated to even put them out." *Id.* at 21:15-18. Even though these handbags were not of the same quality as genuine Coach products, Ms. McDonald testified that they "would still get [customers] buying them just because of what they had on them . . . [T]hey wanted the Coach Cs." *Id.* at 22:6-9. When these low-quality handbags would fall apart, customers would return complaining about the quality. *Id.* at 22:10-13.

On or about April 2011, Coach received a tip regarding the possible sale of counterfeit and infringing Coach merchandise at Island Rayz tanning salon in Proctorville, Ohio. Lau Affidavit at ¶ 19. Coach Investigator Robert Hope visited Island Rayz, located at 7390 County Road 107, Proctorville, Ohio on April 9, 2011. (Doc. 36, Ex. D, ¶ 5, Affidavit of Robert Hope

(hereafter "Hope Affidavit")). There he observed a counterfeit Coach handbag in the front window. *Id.* Upon entering the building, Mr. Hope asked a sales person named Brittany whether the business sold Coach Handbags. *Id.* at ¶ 6. Brittany took Mr. Hope into a separate room filled with counterfeit Coach Handbags. *Id.* Mr. Hope asked Brittany to recommend a handbag for a young woman, in response to which Brittany showed Mr. Hope a handbag that she said was a "popular choice." *Id.* at ¶ 8. Mr. Hope paid forty dollars ($40.00) for the handbag, and was not charged any Ohio Sales Tax. *Id.* at ¶ 9. Brittany also attempted to sell Mr. Hope a counterfeit Coach wallet. *Id.* at ¶ 8. Before leaving, Mr. Hope asked the sales woman who owned the business; she responded that "Tara" was the owner. *Id.* at ¶ 10. Mr. Hope was able to confirm Tara McDonald's affiliation with the business by utilizing the Ohio Secretary of State website. *Id.* at ¶ 11. Upon further inspection, Coach was able to determine that the purchased handbag was in fact counterfeit. Lau Affidavit at ¶ 20; Doc. 36, Ex. E, ¶ 4 (Affidavit of Dayanara Perez (hereafter "Perez Affidavit").

Defendant Ray McDonald verified that an employee Brittany Jeffers was working in the Defendant's Proctorville, Ohio store on April 9, 2011. R. McDonald Depo. at 17:20-22; 73:7-14. April 9, 2011 was a Saturday, and it was Defendants' custom to visit flea markets on weekends and have Brittany Jeffers run the tanning salon and store. *Id.* at 73:15-24. He also examined photographs of the purchased handbag and was able to identify a variety of Coach Registered Trademarks that were present. *See Id.* at 76-79 and corresponding deposition exhibits 4-7. Mr. McDonald verified that the receipt provided to the Coach investigator was "one of [his]," and he verified that no sales tax was charged during the transaction. *Id.* at pp. 89-91. While Defendants keep such receipts in the normal course of their business, their receipts do not indicate the specific item sold, and thus it would be impossible to determine how many handbags bearing the Coach trademarks were sold by Defendants. *Id.* at p. 96:19-23.

### IV. Analysis

Plaintiffs contend the above undisputed facts demonstrate defendants' liability for

trademark infringement and trademark counterfeiting. Plaintiffs therefore assert they are entitled to summary judgment with respect to defendants' liability for trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

> Section 1114 provides in relevant part:
>
> Any person who shall, without consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1). To prevail on a trademark infringement claim under Section 32 of the Lanham Act, plaintiffs must demonstrate "that defendant[s'] mark creates a likelihood of confusion regarding the origin of the goods offered by plaintiff[s] and defendant[s]." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 731 (6th Cir. 2012). Courts must examine the following eight factors when determining whether a likelihood of confusion exists:

1. strength of the senior mark;
2. relatedness of the goods or services;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. the intent of defendant in selecting the mark; and
8. likelihood of expansion of the product lines.

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). This list is not exhaustive but is simply a guide – "[t]he ultimate question remains whether relevant customers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991).

The Court recognizes that "there is a presumption of a likelihood of confusion" where counterfeit goods are involved. *Microsoft Corp. v. Sellers*, 411 F. Supp.2d 913, 919 (E.D. Tenn. 2006) (citing *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)). Thus,

7

while the Court would typically engage in an analysis of the factors enunciated in *Daddy's Junky Music Stores*, 109 F.3d at 280, an extensive discussion of the eight factors is not required in the instant matter. *See Homeowners*, 931 F.2d at 1107 (the factors are not applicable in every case). *See also Ford Motor Co. v. Heritage Mgmt. Group, Inc.*, No. 1:11-CV-92, 2012 WL 5931529, at *4 (E.D. Tenn. Nov. 27, 2012) (presuming likelihood of confusion where sale of counterfeit goods were involved and declining to engage in multi-factor analysis). It is undisputed that defendants were in possession of and sold counterfeit Coach bags at their place of business. *See* T. McDonald Depo. at 9-13, 21-22 ; R. McDonald Depo. at 56-59; Hope Affidavit, ¶¶ 3-12. Plaintiffs have presented uncontroverted evidence that Mr. Hope requested Coach handbags while at Island Rayz and was sold a handbag bearing the Coach trademark. Hope Affidavit, ¶¶ 6-9. Further, defendant Tara McDonald testified that plaintiffs continued to sell the counterfeit, "junky" Coach items because customers specifically requested Coach items and because the customers "wanted the Coach Cs." T. McDonald Depo. at 9, 21-22. In addition, as the products sold by plaintiffs were counterfeits, they were likely to cause confusion for consumers. *Sellers*, 411 F. Supp.2d at 919. Accordingly, plaintiffs have met their burden of showing defendants' mark creates a likelihood of confusion regarding the origin of the items sold by plaintiffs and defendants.

In sum, plaintiffs have demonstrated that there is no genuine issue of material fact as to their claim that defendants are liable under 15 U.S.C. § 1114(1) for trademark infringement and their partial motion for summary judgment is granted.

Plaintiffs also seek a hearing on damages and to demonstrate defendants' willfulness as it relates to plaintiffs' state law claims. The Lanham Act provides that a successful plaintiff may recover actual or statutory damages provided the plaintiff requests statutory damages prior to the trial court's entry of final judgment. 15 U.S.C. § 1117(c). Here, plaintiffs expressed their intent to elect statutory judgment in the motion for partial summary judgment. *See* Doc. 36 at 1. The amount of statutory damages varies from "$1,000 to $200,000 per counterfeit mark" or "if the

8

court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark . . . ." 15 U.S.C. § 1117(c). Plaintiffs have specified that they seek statutory damages under the Lanham Act "only for marks found on the counterfeit handbag sold by [d]efendants on April 9, 2011, which by [defendants'] count, totals seven (7) trademarks, or seven (7) separate infringements." Lau Affidavit, ¶ 23. Plaintiffs have not requested any specific damages amount or proffered any evidence in support thereof but, rather, seek a hearing on the issue. Plaintiffs' request is well-taken and the Court will schedule a damages hearing in this matter.

### V. Conclusion

Plaintiffs' motion for partial summary judgment and request for a hearing on damages (Doc. 36) are **GRANTED**. A hearing is hereby set for **June 12, 2013 at 9:30 a.m. in Courtroom 708** of the Potter Stewart Courthouse in Cincinnati, Ohio. The Clerk of Court is **DIRECTED** to provide a copy of this Order and notice of the hearing to defendants via certified mail.

**IT IS SO ORDERED.**

Date: 4/11/13

Karen L. Litkovitz
United States Magistrate Judge

9

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X | ☒ Agent<br>☐ Addressee |
| | B. Received by (Printed Name) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>Tara K McDonald<br>Ray T. McDonald<br>40 Township Road 185<br>Chesapeake, OH 45619 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No | |
| | 3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. | |
| | 4. Restricted Delivery? (Extra Fee) ☐ Yes | |
| 2. Article Number<br>(Transfer from service label) | 7011 3500 0001 5345 5475 | |
| PS Form 3811, February 2004 | Domestic Return Receipt | 102595-02-M-1540 |